# In the United States Court of Federal Claims

**No. 21-1129C**

**Filed: September 30, 2021**

```
* * * * * * * * * * * * * *    *
                               *
BONNIE KELLY,                  *
                               *
              Plaintiff,       *
        v.                     *
                               *
UNITED STATES,                 *
                               *
              Defendant.       *
* * * * * * * * * * * * * *    *
```

**Bonnie Kelly**, pro se, Omaha, NE.

**Ann C. Motto,** Department of Justice, Washington, DC, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC, for defendant. With her were **Franklin E. White, Jr.,** Assistant Director, Commercial Litigation Branch, **Martin F. Hockey, Jr.**, Acting Director, Commercial Litigation Branch, and **Brian Boynton,** Acting Assistant Attorney General, Civil Division.


# O P I N I O N

<u>**HORN, J.**</u>

## FINDINGS OF FACT

<u>Pro se</u> plaintiff Bonnie Kelly, a former Procurement and Contract Director of the Housing Authority of the City of Omaha (OHA), filed a complaint in the United States Court of Federal Claims after plaintiff had filed several unsuccessful related claims in state court, the United States District Court for the District of Nebraska, the United States Court of Appeals for the Eighth Circuit, and the Nebraska Equal Opportunity Commission (NEOC).[1]

---

[1] Plaintiff asserts she filed a claim for severance pay which was denied because "George Achola lied to Judge Randall, stating she had received her severance pay and that she had no proof of fraud and misappropriation of federal funds." Furthermore, in the United States District Court for the District of Nebraska, plaintiff filed a race and gender discrimination claim as well as a First Amendment retaliation claim. The jury found for the defendant, OHA, on plaintiff's race and gender discrimination claim. <u>See</u> <u>Kelly v. Omaha Hous. Auth.</u>, No. 8:10CV245, 2012 WL 2192295, at *1 (D. Neb. June 14, 2012). Regarding plaintiff's retaliation claim, the United States District Court for the District of

Plaintiff alleges that OHA is federally funded through the United States Department of Housing and Urban Development (HUD), by the Annual Contribution Contract (ACC), to provide subsidized housing to low income tenants. According to plaintiff, she worked for OHA for nearly twelve years, beginning in 1998, and the complaint alleges that she maintained good standing during this time. Plaintiff's complaint alleges that in 2007, after a "**federal take-over**"[2] had ended, new management began working at OHA. Plaintiff alleges she reported to the local HUD department that the new management used an OHA affiliate, Housing in Omaha (HIO), as a false entity, engaged in budget tampering, violated conflict of interest laws, and misappropriated funds. Plaintiff's complaint states:

> On or about January 2008, Kelly – Procurement and Contract Director, deciphered a set-up between OHA and their affiliated, Housing in Omaha (hereinafter 'HIO') which appeared to be 'ultra vires', which means HIO appears to be a real entity on paper but is actually NOT a real agency or corporation, and/or if it is a real agency or corporation, it is acting beyond the purpose and the powers of its intent. Kelly also noticed some tampering with the federal budget. <u>Only the Executive Director and the Accounting Manager have access to the federal funds and only the Executive Director and the Accounting Manager can change the federal budget with approval of the OHA Board-members.</u> Kelly reported this action to the OHA Board-members, Attorney George Achola, Stanley and Brad Ashford, pursuant to the OHA handbook. **Nothing was done; therefore, Kelly reported this action to the local HUD Department who had jurisdiction over the OHA and the federal granted ACC. This information was reported to Mr. Clifton Jones ('Jones').** District 2, City Councilman Frank Brown was on the payroll of a federally-funded agency (OHA and HIO), and was seated as the District 2 City Councilman simultaneously, which violated federal Code of Federal Regulations (24 CFR 85:36) regulations, procurement policies, state regulations, conjunction with local laws and public policies, Conflict of Interest Laws among other laws. Kelly also noticed that federal funds were missing or misappropriated. Kelly reported this action and distributed a copy of the Conflict of Laws to the OHA Board-chair and 2

---

Nebraska granted judgment as a matter of law in favor of OHA. <u>See</u> <u>id.</u> Plaintiff then appealed to the United States Court of Appeals for the Eighth Circuit only the United States District Court's grant of judgment as a matter of law on the retaliation claim, and the appeal was dismissed because plaintiff did not provide a sufficient portion of the district court's trial transcript. <u>See</u> <u>Kelly v. Omaha Hous. Auth.</u>, 721 F.3d 560, 563 (8th Cir. 2013). Plaintiff also filed a complaint with the NEOC, a Nebraska administrative agency charged with investigating discrimination, asserting she faced retaliation, which plaintiff claims was denied because the investigator, "had to rule in favor for the OHA because of politics and Nebraska is a red state."

[2] Capitalization, grammar, punctuation, abbreviations, spelling, emphasis, and choice of words when quoted in this Opinion are as they originally appear in plaintiff's submissions to this court.

Board-members, Attorney George Achola, Stanley Timm and Brad Ashford, pursuant to the OHA handbook. Kelly also noticed that federal funds were no missing or misappropriated. **Nothing was done; therefore, Kelly reported this action to the local HUD Department who had jurisdiction over the OHA and the federal granted ACC. This information was reported to Mr. Jones.** Kelly – Procurement and Contract Director found that it was made to appear that City Councilman Brown was the OHA Executive Director while Executive Director Stan Timm acted as the front man, although the set-up violated Federal and State Law, Conflict of Interest and both District 2, Omaha City Councilman, Frank Brown and OHA Executive Director, Stanley Timm were aware of the federal violations and the illegalities because Kelly advised them of the laws, with print-outs. Kelly reported this action to the OHA Board of Directors, Attorney George Achola, Gale Sayers and Stanley Timm, (Brad Ashford was then running for a US Senator), pursuant to the OHA handbook. **Nothing was done; therefore, Kelly reported this action to the local HUD Department who had jurisdiction over the OHA and the federal granted ACC. This information was reported to Mr. Jones.** Kelly – Procurement and Contract Director provided Executive Director, Stan Timm and Legal Counsel, George Achola with the Conflict of Interest laws, among other laws that appeared to be in violation and expressed her concerns with City Councilman, Frank Brown regarding the conflict of interest laws. Moreover, original budgeted federal monies that were lined for specific projects began to disappear and fake vendors were made-up. According to Kelly's tracking about $1 million dollars were missing or misappropriated.

Plaintiff also contends that she was offered "to turn her head," which she refused. After expressing her concerns over these practices, plaintiff claims, in violation of her constitutional rights, she faced retaliation for two years which included reporting to a new director, racial abuse, physical abuse, and the withholding of severance pay. Finally, plaintiff claims that she was terminated without due process in June 2009.

After her termination from OHA, plaintiff took her concerns to Greg Moyer, the HUD inspector General at the time, the FBI, and various Omaha officials. In July 2009, Mr. Moyer opened an investigation into OHA, and plaintiff contends he promised her compensation if her information led to recovery from OHA. Plaintiff then claims, under the Freedom of Information Act, she received part, though not all, of the forensic audit report from HUD's investigation and asserts that the report proves her allegations of misappropriation of funds at OHA. Plaintiff also contends she received part of the resulting payback agreement, under which HUD recovered $1,103,287.00 and proceeds from property sales.

Plaintiff's complaint alleges that "[t]his Court has jurisdiction over this matter pursuant to the Tucker Act, 28 U.S.C. § 1491, and any other appropriate rules regulations, statutes and ordinances, under express and contract as alleged and described herein," and raises three counts. In count one of the complaint, "**BREACH OF CONTRACT –**

**VIOLATIONS OF THE FEDERAL ANNUAL CONTRIBUTION CONTRACT (ACC) AND FALSE CLAIM ACT – 31 U.S.C. §§ 3729-3733 et seq.**," plaintiff contends that the United States

> has been damaged by all of the above mentioned misrepresentations and false claims in the sum of not less than $1,103,287 **plus the proceeds from the sale of listed properties because** of federal corruption, and the set-up between the Omaha Housing Authority and their affiliated Housing in Omaha (HIO), where the District 2 City Councilman was seated as the District 2 City Councilman simultaneously, which violated federal laws, state regulations, conjunction with, local laws and public policies.

Plaintiff argues, "[t]he United States is entitled to damages and is currently collecting damages from the Housing Authority of the City of Omaha, in accordance to the provisions of 31 U.S.C. §§ 3729-3733 of which up to 30% should be paid to the Plaintiff Kelly, and such other relief as is appropriate under the statutes and laws at issue."

In count two of the complaint, "**BREACH OF CONTRACT – VIOLATIONS OF THE FEDERAL ANNUAL CONTRIBUTION CONTRACT FALSE CLAIM ACT – 31 U.S.C. §§ 3729-3733 et seq. VIOLATION OF WHISTLEBLOWER PROTECTION VIOLATION OF UNITED STATES CONSTITUTION – TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, et seq.**," plaintiff claims that she discovered the fraud scheme and conflicts of interest at OHA. Count two continues,

> [b]ecause of Plaintiff Kelly's written complaint to the United States HUD Inspector General dated July 2009, and to other officials, HUD local Omaha Office, HUD office in Washington DC to the Nebraska State Senator, Ben Nelson, a recovery of missing and/or misappropriation of federal funds has been identified in excess of **$1,103,287.00 plus the proceeds from the sale of listed properties.**

Therefore, plaintiff argues, "[t]he United States is entitled to damages and is currently collecting damages from the Defendant in accordance to the provisions of 31 U.S.C. §§ 3729-3733 of which up to 30% should be paid to Plaintiff, and such other relief as is appropriate under the statutes and laws at issue."

In count three of plaintiff's complaint, "**BREACH OF CONTRACT – VIOLATIONS OF THE FEDERAL ANNUAL CONTRIBUTION CONTRACT, AND IMPLIED CONTRACT ACCORDING TO FEDERAL LAWS, STATE LAWS AND LOCAL LAWS**," plaintiff alleges a breach of contract in violation of the ACC and an implied contract, and that she was retaliated against at work and her employment at OHA "was terminated abruptly and brutally because she would not violate federal laws for OHA officials own personal gain using federal funds." Additionally, plaintiff claims:

> Because Plaintiff would NOT participate in the corruption and the impropriety, to defraud the federal government out of federal funds, she was

subjected to adverse treatment, racial slurs, discrimination, physical abuse, an intolerably hostile work environment, retaliation and job termination, which is in conflict of the law of the land and the U.S. Constitution.

Plaintiff seeks monetary relief related to her employment at OHA. Based on an agreement between the United States Department of Housing and Urban Development (HUD) and OHA, which plaintiff alleges scheduled $1,103,207.00 in payments from OHA to HUD plus proceeds from the sale of properties, plaintiff seeks "up to 30%" of current payments, future payments, and proceeds from the sales. Plaintiff also seeks "treble damages calculated based upon the total amounts of the assistance agreements ACC and any other agreement obtained from the United States Government, which contain false information and false claims." Furthermore, plaintiff requests "the full amount of allowable civil penalties," "all costs of this action and attorney's fees and expenses," and "a trial by jury on all issues so triable."[3]  Plaintiff also filed a motion to proceed in forma pauperis.

On July 1, 2021 defendant filed a motion to dismiss plaintiff's claims due to a lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. In response, on August 19, 2021, plaintiff filed "**PLAINTIFF'S OPPOSITION TO THE GOVERNMENT'S MOTION TO DISMISS**", and argues that "**Kelly disputes the government entire statement in WHOLE**," and claims that defendant's statements in the motion to dismiss are "**in ERROR**" and are "**NOT TRUE, therefore the Defendant's Motion to Dismiss Kelly's Complaint must be DENIED**." On September 1, 2021, defendant filed a reply to the motion to dismiss and urged the court to "reject Ms. Kelly's arguments and dismiss her complaint."

## DISCUSSION

The court recognizes that plaintiff is proceeding pro se. When determining whether a complaint filed by a pro se plaintiff is sufficient to invoke review by a court, a pro se plaintiff is entitled to a more liberal construction of the pro se plaintiff's pleadings. See Haines v. Kerner, 404 U.S. 519, 520-21 (requiring that allegations contained in a pro se complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), reh'g denied, 405 U.S. 948 (1972); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007); Hughes v. Rowe, 449 U.S. 5, 9-10 (1980); Estelle v. Gamble, 429 U.S. 97, 106 (1976), reh'g denied, 429 U.S. 1066 (1977); Matthews v. United States, 750 F.3d 1320, 1322 (Fed. Cir. 2014); Jackson v. United States, 143 Fed. Cl. 242, 245 (2019), Diamond v. United States, 115 Fed. Cl. 516, 524 (2014), aff'd, 603 F. App'x 947 (Fed. Cir.), cert. denied, 135 S. Ct. 1909 (2015). However, "there is no 'duty [on the part] of the trial court . . . to create a claim which [plaintiff] has not spelled out in his [or her] pleading . . . .'" Lengen v. United States, 100 Fed. Cl. 317, 328 (2011) (alterations in original) (quoting Scogin v. United States, 33 Fed. Cl. 285, 293 (1995) (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975))); see also Bussie v. United States, 96 Fed.

---

[3] The court notes that the United States Court of Federal Claims does not hold jury trials. See 28 U.S.C. § 174 (2018). Additionally, as plaintiff is proceeding pro se, there is no possibility for the recovery of attorneys' fees.

Cl. 89, 94, aff'd, 443 F. App'x 542 (Fed. Cir. 2011); Minehan v. United States, 75 Fed. Cl. 249, 253 (2007). "While a pro se plaintiff is held to a less stringent standard than that of a plaintiff represented by an attorney, the pro se plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." Riles v. United States, 93 Fed. Cl. 163, 165 (2010) (citing Hughes v. Rowe, 449 U.S. at 9; and Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2002)); see also Kelley v. Secretary, U.S. Dep't of Labor, 812 F.2d 1378, 1380 (Fed. Cir. 1987) ("[A] court may not similarly take a liberal view of [] jurisdictional requirement[s] and set a different rule for pro se litigants only."); Hartman v. United States, 150 Fed. Cl. 794, 796 (2020); Schallmo v. United States, 147 Fed. Cl. 361, 363 (2020); Hale v. United States, 143 Fed. Cl. 180, 184 (2019) ("[E]ven pro se plaintiffs must persuade the court that jurisdictional requirements have been met." (citing Bernard v. United States, 59 Fed. Cl. 497, 499, aff'd, 98 F. App'x 860 (Fed. Cir. 2004))); Golden v. United States, 129 Fed. Cl. 630, 637 (2016); Shelkofsky v. United States, 119 Fed. Cl. 133, 139 (2014) ("[W]hile the court may excuse ambiguities in a pro se plaintiff's complaint, the court 'does not excuse [a complaint's] failures.'" (quoting Henke v. United States, 60 F.3d 795, 799 (Fed. Cir. 1995))); Harris v. United States, 113 Fed. Cl. 290, 292 (2013) ("Although plaintiff's pleadings are held to a less stringent standard, such leniency 'with respect to mere formalities does not relieve the burden to meet jurisdictional requirements.'" (quoting Minehan v. United States, 75 Fed. Cl. at 253)).

"Subject-matter jurisdiction may be challenged at any time by the parties or by the court sua sponte." Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir. 2004) (Fanning, Phillips & Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998)), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. denied, 545 U.S. 1127 (2005); see also St. Bernard Parish Gov't v. United States, 916 F.3d 987, 992-93 (Fed. Cir. 2019) ("[T]he court must address jurisdictional issues, even sua sponte, whenever those issues come to the court's attention, whether raised by a party or not, and even if the parties affirmatively urge the court to exercise jurisdiction over the case." (citing Foster v. Chatman, 136 S. Ct. 1737, 1745 (2016)); Int'l Elec. Tech. Corp. v. Hughes Aircraft Co., 476 F.3d 1329, 1330 (Fed. Cir. 2007); Haddad v. United States, 152 Fed. Cl. 1, 16 (2021); Fanelli v. United States, 146 Fed. Cl. 462, 466 (2020). The Tucker Act, 28 U.S.C. § 1491 (2018), grants jurisdiction to this court as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. See United States v. Navajo Nation, 556 U.S. 287, 289-90 (2009); see also Me. Community Health Options v. United States, 140 S. Ct. 1308, 1327-28

(2020); United States v. Mitchell, 463 U.S. 206, 216 (1983); Sanford Health Plan v. United States, 969 F.3d 1370, 1378 (Fed. Cir. 2020); Alvarado Hosp., LLC v. Price, 868 F.3d 983, 991 (Fed. Cir. 2017); Greenlee Cnty., Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 552 U.S. 1142 (2008); Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999); Gulley v. United States, 150 Fed. Cl. 405, 411 (2020); Kuntz v. United States, 141 Fed. Cl. 713, 717 (2019). "Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States . . . ." United States v. Mitchell, 463 U.S. at 216; see also United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003); N.Y. & Presbyterian Hosp. v. United States, 881 F.3d 877, 881 (Fed. Cir. 2018); Smith v. United States, 709 F.3d 1114, 1116 (Fed. Cir.), cert. denied, 571 U.S. 945 (2013); RadioShack Corp. v. United States, 566 F.3d 1358, 1360 (Fed. Cir. 2009); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1343 (Fed. Cir. 2008) ("[P]laintiff must . . . identify a substantive source of law that creates the right to recovery of money damages against the United States."); Olson v. United States, 152 Fed. Cl. 33, 40-41 (2021); Jackson v. United States, 143 Fed. Cl. at 245. In Ontario Power Generation, Inc. v. United States, the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims. The Ontario Power Generation, Inc. court wrote:

> The underlying monetary claims are of three types. . . . First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver . . . . Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." Eastport S.S. [Corp. v. United States, 178 Ct. Cl. 599, 605-06,] 372 F.2d [1002,] 1007-08 [(1967)] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket'" (quoting Clapp v. United States, 127 Ct. Cl. 505, 117 F. Supp. 576, 580 (1954)) . . . . Third, the Court of Federal Claims has jurisdiction over those claims where "money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." Eastport S.S., 372 F.2d at 1007. Claims in this third category, where no payment has been made to the government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." Id.; see also [United States v. ]Testan, 424 U.S. [392,] 401-02 [(1976)] ("Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim-whether it be the Constitution, a statute, or a regulation-does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself . . . can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" (quoting Eastport S.S., 372 F.2d at 1009)). This category is commonly referred to as claims brought under a "money-mandating" statute.

Ont. Power Generation, Inc. v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004); see also Samish Indian Nation v. United States, 419 F.3d 1355, 1364 (Fed. Cir. 2005); Twp. of Saddle Brook v. United States, 104 Fed. Cl. 101, 106 (2012).

To prove that a statute or regulation is money-mandating, a plaintiff must demonstrate that an independent source of substantive law relied upon "'can fairly be interpreted as mandating compensation by the Federal Government.'" United States v. Navajo Nation, 556 U.S. at 290 (quoting United States v. Testan, 424 U.S. at 400); see also United States v. White Mountain Apache Tribe, 537 U.S. at 472; United States v. Mitchell, 463 U.S. at 217; Blueport Co., LLC v. United States, 533 F.3d 1374, 1383 (Fed. Cir. 2008), cert. denied, 555 U.S. 1153 (2009); Szuggar v. United States, 145 Fed. Cl. 331, 335 (2019). The source of law granting monetary relief must be distinct from the Tucker Act itself. See United States v. Navajo Nation, 556 U.S. at 290 (The Tucker Act does not create "substantive rights; [it is simply a] jurisdictional provision[] that operate[s] to waive sovereign immunity for claims premised on other sources of law (e.g., statutes or contracts)."); see also Me. Community Health Options v. United States, 140 S. Ct. at 1327-28. "'If the statute is not money-mandating, the Court of Federal Claims lacks jurisdiction, and the dismissal should be for lack of subject matter jurisdiction.'" Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1308 (Fed. Cir. 2008) (quoting Greenlee Cnty., Ariz. v. United States, 487 F.3d at 876); see also N.Y. & Presbyterian Hosp. v. United States, 881 F.3d at 881; Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (noting that the absence of a money-mandating source is "fatal to the court's jurisdiction under the Tucker Act"); Olson v. United States, 152 Fed. Cl. at 41; Downey v. United States, 147 Fed. Cl. 171, 175 (2020) ("And so, to pursue a substantive right against the United States under the Tucker Act, a plaintiff must identify and plead a money-mandating constitutional provision, statute, or regulation." (citing Cabral v. United States, 317 F. App'x 979, 981 (Fed. Cir. 2008))); Jackson v. United States, 143 Fed. Cl. at 245 ("If the claim is not based on a 'money-mandating' source of law, then it lies beyond the jurisdiction of this Court." (citing Metz v. United States, 466 F.3d 991, 997 (Fed. Cir. 2006)).

"Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir.) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 9-10 (1983)), reh'g denied (Fed. Cir. 1997); see also Klamath Tribe Claims Comm. v. United States, 97 Fed. Cl. 203, 208 (2011); Gonzalez-McCaulley Inv. Grp., Inc. v. United States, 93 Fed. Cl. 710, 713 (2010). ). A plaintiff need only state in the complaint "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2) (2021); Fed. R. Civ. P. 8(a)(1), (2) (2021); see also Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-57, 570 (2007)). To properly state a claim for relief, "[c]onclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998); see also McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1363 n.9 (Fed. Cir. 2007) (Dyk, J.,

concurring in part, dissenting in part) (quoting C. WRIGHT AND A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1286 (3d ed. 2004)); "A plaintiff's factual allegations must 'raise a right to relief above the speculative level' and cross 'the line from conceivable to plausible.'" Three S Consulting v. United States, 104 Fed. Cl. 510, 523 (2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555), aff'd, 562 F. App'x 964 (Fed. Cir.), reh'g denied (Fed. Cir. 2014); see also Hale v. United States, 143 Fed. Cl. at 190. As stated in Ashcroft v. Iqbal, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' 550 U.S. at 555. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555).

In the motion to dismiss, defendant argues:

Ms. Kelly is not employed by HUD or any Federal agency. She is a former employee of a Nebraska state agency, OHA, and the majority of the allegations in the complaint stem from allegations of corruption, and her ultimate termination, at OHA. This Court, however, does not possess jurisdiction to entertain claims asserted against state and local government entities, state and local government officials and employees, or private individuals.

(internal citations omitted)

In each of the three counts in plaintiff's complaint plaintiff raises allegations of improprieties on the part of OHA or its employees. OHA is an agency of the State of Nebraska. It is well established that this court lacks jurisdiction to hear claims against state or local officials, who are not federal employees. See United States v. Sherwood, 312 U.S. 584, 588 (1941) (noting that "if the relief sought is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of the court [United States Court of Claims]" (citing United States v. Jones, 131 U.S. 1, 9 (1889); Lynn v. United States, 110 F.2d 586, 588 (5th Cir. 1940); Leather & Leigh v. United States, 61 Ct. Cl. 388 (1925))); see also Brown v. United States, 105 F.3d 621, 624 (Fed. Cir. 1997) ("The Tucker Act grants the Court of Federal Claims jurisdiction over suits against the United States, not against individual federal officials."); Bey v. United States, 153 Fed. Cl. 814, 819 (2021) (holding that the United States Court of Federal Claims does not have jurisdiction over claims against state and local agencies); Gulley v. United States, 150 Fed. Cl. 405, 412-13 (2020); Cooper v. United States, 137 Fed. Cl. 432, 434 (2018) (finding that the United States Court of Federal Claims "lacks subject matter jurisdiction to consider plaintiff's claims to the extent they are made against individuals"); Robinson v. United States, 127 Fed. Cl. 417, 420 (2016) ("The court is without 'jurisdiction over claims against individuals.'" (quoting Emerson v. United States, 123 Fed. Cl. 126, 129 (2015))); Merriman v. United States, 128 Fed. Cl. 599, 602 (2016) ("The United States Court of Federal Claims does not have subject matter jurisdiction over claims against private individuals or state officials." (citing United States v. Sherwood, 312 U.S. at 588); Hicks v. United States, 118 Fed. Cl. 76, 81 (2014); Cox v. United States, 105 Fed. Cl. 213, 216, appeal dismissed, 12-5108 (Fed. Cir. 2012); Reid v. United States, 95 Fed. Cl. 243, 248 (2010) ("When a plaintiff's complaint names private parties, or local, county, or

state agencies, rather than federal agencies, this court [the United States Court of Federal Claims] has no jurisdiction to hear those allegations." (quoting Moore v. Pub. Defs. Office, 76 Fed. Cl. 617, 620 (2007))). Therefore, the United States Court of Federal Claims cannot exercise jurisdiction over plaintiff's claims alleging impropriety on the part of OHA because OHA is a state agency. Nor can the court exercise jurisdiction over plaintiff's claims against any Nebraska state official.

Plaintiff also alleges breach of contract in each of the three counts of plaintiff's complaint. Contract claims against the United States are governed by the Tucker Act, which grants jurisdiction to this court as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. See United States v. Navajo Nat., 556 U.S. 287, 289-90 (2009); United States v. Mitchell, 463 U.S. 206, 215 (1983); see also Kam-Almaz v. United States, 682 F.3d at 1368; Greenlee Cnty., Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 552 U.S. 1142 (2008); Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999).

Privity of contract between a plaintiff and the United States government is required to bring a cause of action in the United States Court of Federal Claims for express and implied contracts. See Cienega Gardens v. United States, 194 F.3d 1231, 1239 (Fed. Cir. 1998) ("Under the Tucker Act, the Court of Federal Claims has jurisdiction over claims based on 'any express or implied contract with the United States.' 28 U.S.C. § 1491(a)(1) (1994); We have stated that '[t]o maintain a cause of action pursuant to the Tucker Act that is based on a contract, the contract must be between the plaintiff and the government.' Ransom v. United States, 900 F.2d 242, 244 (Fed. Cir. 1990)."), cert. denied, 528 U.S. 820 (1999); see also Estes Exp. Lines v. United States. 739 F.3d 689, 693 (Fed. Cir. 2014); Flexfab, L.L.C. v. United States, 424 F.3d 1254, 1265 (Fed. Cir. 2005) (The "government consents to be sued only by those with whom it has privity of contract."); S. Cal. Fed. Sav. & Loan Ass'n v. United States, 422 F.3d 1319, 1328 (Fed. Cir.) ("A plaintiff must be in privity with the United States to have standing to sue the sovereign on a contract claim," but noting exceptions to this general rule (citing Anderson v. United States, 344 F.3d 1343, 1352 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2003); United States v. Algoma Lumber Co., 305 U.S. 415, 421 (1939))), reh'g and reh'g en banc denied (Fed. Cir. 2005), cert. denied, 548 U.S. 904 (2006); Erickson Air

Crane Co. of Wash. v. United States, 731 F.2d 810, 813 (Fed. Cir. 1984) ("The government consents to be sued only by those with whom it has privity of contract.").

To have privity of contract with the United States government, and, therefore, to invoke jurisdiction in the United States Court of Federal Claims for an alleged breach of contract claim, plaintiff "must show that either an express or implied-in-fact contract underlies [the] claim." Trauma Serv. Grp. v. United States, 104 F.3d 1321, 1325 (Fed. Cir. 1997); see also Park Props. Assocs., L.P. v. United States, 916 F.3d 998, 1002 (Fed. Cir. 2019), cert. denied, 140 S. Ct. 857 (2020). "An express contract "'must be manifested by words, either oral or written which contains agreement and/or mutual assent."'" Frankel v. United States, 118 Fed. Cl. 332, 335 (2014) (quoting Essen Mall Props. v. United States, 21 Cl. Ct. 430, 439 (1990), aff'd, 842 F.3d 1246 (Fed. Cir. 2016) (quoting Webster University v. United States, 20 Cl. Ct. 429, 433 (1990))). An implied-in-fact contract, however, is an agreement "'"founded upon a meeting of the minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding."'" Trauma Serv. Grp. v. United States, 104 F.3d at 1325 (quoting Hercules, Inc. v. United States, 516 U.S. 417, 424 (1996) (quoting Balt. & Ohio R.R. Co. v. United States, 261 U.S. 592, 597 (1923))); see also Kam-Almaz v. United States, 682 F.3d 1364, 1368 (Fed. Cir. 2012); Bank of Guam v. United States, 578 F.3d 1318, 1329 (Fed. Cir. 2009) (citing Trauma Serv. Grp. v. United States, 104 F.3d at 1326), reh'g and reh'g en banc denied (Fed. Cir. 2009), cert. denied, 561 U.S. 1006 (2010); Bay View, Inc. v. United States, 278 F.3d 1259, 1265-66 (Fed. Cir. 2001), reh'g and reh'g en banc denied, 285 F.3d 1035 (Fed. Cir.), cert. denied, 537 U.S. 826 (2002); XP Vehicles. Inc. v. United States, 121 Fed. Cl. 770, 781 (2015); Westlands Water Dist. v. United States, 109 Fed. Cl. 177, 203 (2013); Peninsula Grp. Capital Corp. v. United States, 93 Fed. Cl. 720, 728 (2010) (citing Balt. & Ohio R.R. Co. v. United States, 261 U.S. at 597; and Russell Corp. v. United States, 537 F.2d 474, 210 Ct. Cl. 596, 609 (1976)), appeal dismissed, 454 F. App'x 900 (Fed. Cir. 2011). Such an agreement will not be implied "unless the meeting of minds was indicated by some intelligible conduct, act or sign." Balt. & Ohio R.R. Co. v. United States, 261 U.S. at 598; see also Russell Corp. v. United States, 210 Ct. Cl. at 609.

The elements for both express and implied contracts with the United States are identical. See Night Vision Corp. v. United States, 469 F.3d 1369, 1375 (Fed. Cir. 2006) ("The elements of an implied-in-fact contract are the same as those of an oral express contract."), cert. denied, 550 U.S. 934 (2007); Hanlin v. United States, 316 F.3d 1325, 1328 (Fed. Cir. 2003) ("Thus, the requirements for an implied-in-fact contract are the same as for an express contract; only the nature of the evidence differs."); City of Cincinnati v. United States, 153 F.3d 1375, 1377 (Fed. Cir. 1998). The required elements to demonstrate an express or implied contract are: "(1) mutuality of intent to contract; (2) consideration; and, (3) lack of ambiguity in offer and acceptance." Id.; see also Yifrach v. United States, 145 Fed. Cl. 691, 698 (2019), appeal filed, No. 20-1535 (Fed. Cir. Mar. 6, 2020); Bank of Guam v. United States, 578 F.3d at 1326 (quoting Trauma Serv. Grp. v. United States, 104 F.3d at 1325); see also Chattler v. United States, 632 F.3d 1324, 1330 (2011) (citing Trauma Serv. Grp. v. United States, 104 F.3d at 1325); Hanlin v. United States, 316 F.3d at 1328 (citing City of Cincinnati v. United States, 153 F.3d at 1377));

Edwards v. United States, 22 Cl. Ct. 411, 420 (1991) (citing Essen Mall Props. v. United States, 21 Cl. Ct. at 440; Pac. Gas & Elec. Co. v. United States, 3 Cl. Ct. 329, 339 (1983), aff'd, 738 F.2d 452 (Fed. Cir. 1984); and City of Klawock v. United States, 2 CL Ct. 580, 584 (1983), aff'd, 732 F.2d 168 (Fed. Cir. 1984)); see also Total Med. Mgmt., Inc. v. United States, 104 F.3d 1314, 1319 (Fed. Cir.) ("The requirements for a valid contract with the United States are: a mutual intent to contract including offer, acceptance, and consideration; and authority on the part of the government representative who entered or ratified the agreement to bind the United States in contract." (citations omitted)), reh'g and reh'g en banc suggestion denied (Fed. Cir.), cert. denied, 522 U.S. 857 (1997); San Carlos Irr. & Drainage Dist. v. United States, 877 F.2d 957, 959 (Fed. Cir. 1989); Stanwyck v. United States, 127 Fed. Cl. 308, 312 (2016); Huntington Promotional & Supply, LLC v. United States, 114 Fed. Cl. at 767; Eden Isle Marina. Inc. v. United States, 113 Fed. Cl. 372, 492 (2013); Council for Tribal Emp't Rights v. United States, 112 Fed. Cl. 231, 243 (2013), aff'd, 556 F. App'x 965 (2014); Biofunction, L.L.C. v. United States, 92 Fed. Cl. 167, 172 (2010); Mastrolia v. United States, 91 Fed. Cl. at 384 (citing Flexfab, L.L.C. v. United States, 424 F.3d 1254, 1265 (2005)).

When the United States is a party to an alleged express or implied-in-fact contract, "a fourth requirement is added: The government representative whose conduct is relied upon must have actual authority to bind the government in contract." City of Cincinnati v. United States, 153 F.3d at 1377 (quoting City of El Centro v. United States, 922 F.2d 816, 820 (Fed. Cir. 1990), cert. denied, 501 U.S. 1230 (1991)); see Trauma Serv. Grp. v. United States, 104 F.3d at 1325; Total Med. Mgmt. v. United States, 104 F.3d 1314, 1319 (Fed. Cir. 1997) (citing Thermalon Indus. v. United States, 34 Fed. Cl. 411, 414 (1995)); Weeks v. United States, 124 Fed. Cl. 630, 633 (2016); Vargas v. United States, 114 Fed. Cl. 226, 233 (2014); Prairie Cnty., Mont. v. United States, 113 Fed. Cl. 194, 202 (2013), aff'd, 782 F.3d 685 (Fed. Cir.), cert. denied, 136 S. Ct. 319 (2015); California Human Dev. Corp. v. United States, 87 Fed. Cl. 282, 293 (2009), aff'd, 379 F. App'x 979 (Fed. Cir. 2010); Aboo v. United States, 86 Fed. Cl. 618, 629, aff'd, 347 F. App'x 581 (Fed. Cir. 2009); SGS-92-X003 v. United States, 74 Fed. Cl. 637, 653-54 (2007); Arakaki v. United States, 71 Fed. Cl. 509, 514 (2006), aff'd, 228 F. App'x 1003 (Fed. Cir. 2007); Fincke v. United States, 230 Ct. Cl. 233, 243-44, 675 F.2d 289, 295 (1982); Russell Corp. v. United States, 210 Ct. Cl. at 608-09. As a general proposition, "[t]he law requires that a Government agent who purports to enter into or ratify a contractual agreement that is to bind the United States have actual authority to do so." Monarch Assurance P.L.C. v. United States, 244 F.3d 1356, 1360 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2001) (citing Trauma Serv. Grp. v. United States, 104 F.3d at 1325). "The corollary is that any party entering into an agreement with the Government accepts the risk of correctly ascertaining the authority of the agents who purport to act for the Government . . . ." Id. (citing Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384 (1947); see also Snyder & Assocs. Aquisitions LLC v. United States, 133 Fed. Cl. 120, 126 (2017).

The United States Court of Appeals for the Federal Circuit has viewed claims for relief due to third party beneficiary status as distinct from claims for relief due to privity of express or implied contract. See Sioux Honey Ass'n v. Hartford Fire Ins. Co., 672 F.3d 1041, 1056 (Fed. Cir.), cert. denied, 133 S. Ct. 126 (2012) ("A plaintiff lacking privity of contract can nonetheless sue for damages under that contract if it qualifies as an intended

third-party beneficiary."); Alpine Cnty., Cal. v. United States, 417 F.3d 1366, 1368 (Fed. Cir. 2005) ("In order to sue for damages on a contract claim, a plaintiff must have either direct privity or third-party beneficiary status."); Anderson v. United States, 344 F.3d at 1352 ("Without either direct privity or third-party beneficiary status, the Paul sons lack standing to sue the government and cannot therefore recover damages from the United States."); Nelson Const. Co. v. United States, 79 Fed. Cl. 81, 95 (2007); Entergy Nuclear Indian Point 2, LLC v. United States, 64 Fed. Cl. 515, 523 (2005) ("To have standing to bring a breach of contract claim, plaintiffs must also be in privity of contract with the government or a third party beneficiary of a contract with the government."); see also Sullivan v. United States, 625 F.3d 1378, 1380 (Fed. Cir. 2010) ("This Court has recognized limited exceptions to that general rule when a party standing outside of privity 'stands in the shoes of a party within privity.'" (quoting First Hartford Corp. Pension Plan & Trust v. United States, 194 F.3d 1279, 1289 (Fed. Cir. 1999), reh'g en banc denied (Fed. Cir. 2000))); O. Ahlborg & Sons, Inc. v. United States, 74 Fed. Cl. 178, 188 (2006) ("The third-party beneficiary exception exists to cover situations in which the subcontractor 'stands in the shoes of a party with privity.'" (quoting First Hartford Corp. Pension Plan & Trust v. United States, 194 F.3d at 1289)). But see Chancellor Manor v. United States, 331 F.3d 891, 901 (Fed. Cir. 2003) (holding that "Appellants could establish privity of contract if they are intended third-party beneficiaries of a contract with the United States . . . ." (citing First Hartford Corp. Pension Plan & Trust v. United States, 194 F.3d at 1289; Stockton E. Water Dist. v. United States, 70 Fed. Cl. 515, 526 (2006) ("One method of 'establish[ing] privity of contract [is] if [plaintiffs] are intended third-party beneficiaries of a contract with the United States . . . .'" (quoting Chancellor Manor v. United States, 331 F.3d at 901)) (modifications in original), judgment entered, 75 Fed. Cl. 321, modifying in part, 76 Fed. Cl. 470, reconsideration denied, 76 Fed. Cl. 497 (2007), rev'd on other grounds, 583 F.3d 1344 (Fed. Cir. 2009), partial reh'g granted, 638 F.3d 781 (Fed. Cir. 2011); Klamath Irrigation Dist. v. United States, 67 Fed. Cl. 504, 532 ("Such privity would exist if the irrigators are properly viewed as third-party beneficiaries to the district contracts." (citing Chancellor Manor v. United States, 331 F.3d at 901, and First Hartford Corp. Pension Plan & Trust v. United States, 194 F.3d at 1289)), modifying order, 68 Fed. Cl. 119, denying certification, 69 Fed. Cl. 160 (2005). "'Third party beneficiary status is an "exceptional privilege."'" Owl Creek Asia I, L.P. v. United States, 148 Fed. Cl. 614, 640 (2020) (quoting Glass v. United States, 258 F.3d 1349, 1354 (Fed. Cir. 2001) (quoting German All. Ins. Co. v. Home Water Supply Co., 226 U.S. 220, 230 (1912))). The conditions for attaining third party beneficiary status are "stringent." See id.

Although plaintiff claims "[t]his being **a contract action brought against the United States**, must begin with the Tucker Act," plaintiff only cites to the ACC as evidence of a contract. Plaintiff has not alleged that she personally entered into a contract with the United States government, and, therefore, has not demonstrated privity of contract with the United States. Nor has she demonstrated or even alleged that she was a third party beneficiary to any contract with the United States. Although plaintiff alleges that the United States had a contract to provide funds to OHA through the ACC, plaintiff was not a party to the ACC contract or the payback agreement. In sum, the United States did not enter into a contract with the plaintiff, nor was the plaintiff extended third party beneficiary states

for a contract on her behalf. Accordingly, this court does not have jurisdiction over plaintiff's breach of contract allegations due to lack of privity.

Additionally, defendant's motion to dismiss alleges that "Ms. Kelly does not allege any facts to support the existence of a contract with the United States, nor does she plausibly allege any facts that the Government breached a contract." Plaintiff responds that she disputes defendant's argument "**in its entirety**," and argues defendant's claims are "**in ERROR**" and are "**NOT TRUE**." The United States Supreme Court has stated:

> While a complaint attacked by Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ibid. [Conley v. Gibson, 355 U.S. 41, 47 (1957)]; Sanjuan v. American Bd. Of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (C.A.7 1994), a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure §1216 pp. 235-236 (3d ed. 2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), see, e.g., Swierkiewicz v. Sorema N.A., 535 U.S. 506, 508 n.1 (2002); Nietzke v. Williams, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").
>
> . . .
>
> [W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim that relief that is plausible on its face.

Bell Atl. Corp. v. Twombly, 550 U.S. at 555-56, 570 (brackets added) (footnote omitted) (first three omissions in original); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555-57, 570); Am. Bankers Ass'n v. United States, 932 F.3d 1375, 1380 (Fed. Cir. 2019); Frankel v. United States, 842 F.3d 1246, 1249 (Fed. Cir. 2016); A&D Auto Sales, Inc. v. United States, 748 F.3d 1142, 1157 (Fed. Cir. 2014); Bell/Heery v. United States, 739 F.3d 1324, 1330 (Fed. Cir. 2014), reh'g and reh'g en banc denied, (Fed. Cir. 2014); Kam-Almaz v. United States, 682 F.3d 1364, 1367 (Fed. Cir. 2012) ("The facts as alleged 'must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" (quoting Bell Atl. Corp. v. Twombly, 550 U.S at 557)); Totes-Isotoner Corp. v. United States, 594 F.3d 1346, 1354-55 (Fed. Cir. 2010), cert. denied, 562 U.S. 830 (2010); Bank of Guam v. United States, 578 F.3d 1318, 1326 (Fed. Cir. 2009) ("In

order to avoid dismissal for failure to state a claim, the complaint must allege facts 'plausibly' suggesting (not merely consistent with)' a showing of entitlement to relief." (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 557)), <u>reh'g</u> <u>and</u> <u>reh'g</u> <u>en</u> <u>banc</u> <u>denied</u>, (Fed. Cir. 2009), <u>cert.</u> <u>denied</u>, 561 U.S. 1006 (2010); <u>Cambridge v. United States</u>, 558 F.3d 1331, 1335 (Fed. Cir. 2009) ("[A] plaintiff must plead factual allegations that support a facially 'plausible' claim to relief in order to avoid dismissal for failure to state a claim." (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 570)); <u>Cary v. United States</u>, 552 F.3d 1373, 1376 (Fed. Cir.) ("The factual allegations must be enough to raise a right to relief above the speculative level. This does not require the plaintiff to set out in detail the facts upon which the claim is based, but enough facts to state a claim to relief that is plausible on its face." (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 555, 570)), <u>reh'g</u> <u>denied</u>, (Fed. Cir.), <u>cert.</u> <u>denied</u>, 557 U.S. 937 (2009); <u>Christen v. United States</u>, 133 Fed. Cl. 226, 229 (2017); <u>Christian v. United States</u>, 131 Fed. Cl. 134, 144 (2017); <u>Vargas v. United States</u>, 114 Fed. Cl. 226, 232 (2014); <u>Fredericksburg Non-Profit Hous. Corp. v. United States</u>, 113 Fed. Cl. 244, 253 (2013), <u>aff'd</u>, 579 F. App'x 1004 (Fed. Cir. 2014); <u>Peninsula Grp. Capital Corp. v. United States</u>, 93 Fed. Cl. 720, 726-27 (2010); <u>Legal Aid Soc'y of N.Y. v. United States</u>, 92 Fed. Cl. 285, 292, 298 n.14 (2010).

Based on the previously noted requirements for forming a contract with the United States government, plaintiff has not stated a breach of contract claim, the complaint fails to allege that a valid contract existed between plaintiff and the United States. No provisions in the ACC or the payback agreement granted plaintiff access to the funds. To the extent she alleges that she was promised payment by a local HUD official, there is no indication that the employee had the authority to offer plaintiff a portion of the recovered funds. Therefore, plaintiff's complaint also failed to state a claim upon which relief can be granted.

## CONCLUSION

For the reasons discussed above, this court does not have jurisdiction over the allegations included in plaintiff's complaint and plaintiff had failed to state a claim upon which relief can be granted. Therefore, plaintiff's complaint is **DISMISSED**. Plaintiff's motion to proceed in forma pauperis is **MOOT**. The Clerk of the Court shall enter **JUDGMENT** consistent with this Opinion.

**IT IS SO ORDERED.**

s/Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**